UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SAMANTHA NICHOLE HOUSTON GOODALE, Individually and As Next Friend of L.R.G., Minor Child of RANDALL GLEN GOODALE, JR., Deceased,<br><br>*Plaintiff*,<br><br>v.<br><br>MARK SEGUIN, NATHAN BUNDY, and THE CITY OF SAN ANTONIO, TEXAS,<br><br>*Defendants*. | Civil Action No. 5:22-cv-00031-XR |

## DEFENDANT DEPUTY U.S. MARSHAL MARK SEGUIN'S MOTION TO DISMISS

Now comes Defendant Deputy U.S. Marshal Mark Seguin and files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### BACKGROUND

Plaintiff asserts claims arising from the fatal shooting of Randall Glen Goodale Jr. on January 13, 2020, by officers of the Lone Star Fugitive Task Force. The task force officers, which included Defendant Deputy U.S. Marshal (DUSM) Mark Seguin as well as officers from the San Antonio Police Department (SAPD) and other agencies, had been dispatched to carry out a federal felony arrest warrant on Goodale. Docket no. 1 at ¶ 24.

Plaintiff alleges that, when officers arrived to arrest Goodale on January 13, 2020, they encountered Goodale in the cab of a truck backed into a residential driveway, and fatally shot him shortly after arriving on the scene. Docket no. 1 at ¶ 26. Plaintiff asserts, "[u]pon information and

belief," that Goodale did not attempt to resist arrest, did not threaten the officers, and was not armed. Docket no. 1 at ¶¶ 27, 29-31. In DUSM Seguin's account, Goodale had been working underneath the truck, and as he saw task force officers approach, Goodale moved into the cab, locked himself inside, turned on the ignition, and ignored repeated officer commands to step out of the truck. According to DUSM Seguin, he fired only after Goodale shifted the truck into gear, causing DUSM Seguin to fear that Goodale intended to flee in the truck, endangering the officers and police vehicles in the truck's forward path. Video footage of the incident was recorded by at least two home surveillance systems, one filmed from across the street, and the second filmed from an upstairs window overlooking the driveway in which the encounter occurred.[1]

Plaintiff asserts *Bivens*[2] claims against DUSM Seguin, alleging that his use of deadly force violated Goodale's rights under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. Docket no. 1 at ¶¶ 2, 8, 34, 38-44. Plaintiff contends that DUSM Seguin's use of force violated Goodale's rights under the Fifth Amendment because it deprived him of life and liberty without due process of law, docket no. 1 at ¶¶ 37, and violated his equal protection and due process rights under the Fourteenth Amendment, *id.* at ¶¶ 38, 44.

---

[1] The footage recorded from the across the street is submitted with this filing as Exhibit A. The second recording, filmed from a window overlooking the incident, was provided to local news media, who broadcast the footage as part of a report on the incident. *See SAPD report: Suspect killed in officer-involved shooting ignored commands, turned steering wheel toward officer*, KSAT 12, available at https://www.ksat.com/news/local/2020/01/27/sapd-report-suspect-killed-in-officer-involved-shooting-ignored-commands-turned-steering-wheel-toward-officer/ (last visited June 8, 2022). A copy of that broadcast is submitted with this filing as Exhibit B.

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## LEGAL STANDARDS

The sufficiency of a pleading to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) is evaluated under the two-step process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, the Court must identify the Complaint's factual allegations, which are assumed to be true, and distinguish them from any conclusory statements that are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678, 680-81. However, video recordings that are included in the pleadings and that contradict facts alleged in a plaintiff's complaint will control at the motion-to-dismiss stage. *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1163 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Second, the Court must assess whether the assumed-as-true factual allegations set forth a plausible claim to relief. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679. Ultimately, the claim is subject to dismissal if it lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Plaintiff's claims in this case are subject to dismissal at this stage for at least three reasons. First, Plaintiff's Fifth and Fourteenth Amendment claims are not viable because they arise from an allegedly unreasonable use of force—a claim for which the Fourth Amendment, not the due process or equal protection clauses found in the Fifth and Fourteenth Amendments, provides the explicit textual source of constitutional protection. *Graham v. Connor*, 490 U.S. 386, 395 (1989)

("*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.").

Second, Plaintiff's Fifth and Fourteenth Amendment claims against DUSM Seguin would require this Court to engage in the "'disfavored judicial activity'" of expanding the *Bivens* implied remedy into new contexts. *See generally Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)); *Egbert v. Boule*, No. 21-147, 2022 WL 2056291 (U.S. June 8, 2022). The special factors identified in *Abbasi*, *Oliva*, and *Egbert* weigh against the expansion of *Bivens* that would be necessary for Plaintiff's Fifth and Fourteenth Amendment claims to proceed. Those claims should therefore be dismissed.

Third, Plaintiff's Fourth Amendment excessive force claim should be dismissed because the video recording of the encounter between Goodale and the task force members contradicts Plaintiff's conclusory assertions that the use of deadly force was unreasonable. Instead, the video recordings show that it was reasonable for DUSM Seguin to fear that Goodale posed a threat to DUSM Seguin and others on the scene. *See generally Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1164 & n.2 (5th Cir. 2021) (affirming grant of Rule 12(b)(6) dismissal of claim for fatal use of force where video of encounter contradicted conclusory claims that officers were "never exposed to any risk of harm or injury" from plaintiff). Because DUSM Seguin's use of deadly force was reasonable, his actions did not violate Goodale's rights under the Fourth Amendment, DUSM Seguin is entitled to qualified immunity, and Plaintiff's Fourth Amendment claim should be dismissed.

### A. Plaintiff's Fifth and Fourteenth Amendment Claims Should be Dismissed Because the Fourth Amendment Provides the Exclusive Textual Source of Protection Against Excessive Force

Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims against DUSM Seguin all arise in their entirety from DUSM Seguin's use of deadly force. Docket no. 1 at ¶¶ 39 (alleging violation of Fourth Amendment right by "subjecting [Goodale] to excessive force by fatally shooting him"); 40 (alleging violation of Fifth Amendment right by "use of excessive force in lethally shooting Randall Glenn Goodale, Jr."); 43 (alleging that "said shooting constituted an unreasonably and excessive use of force in violation of Randall Glenn Goodale, Jr.'s guaranteed rights under the Fourteenth Amendment"). Plaintiff attempts to assert three distinct claims under at least three different constitutional provisions based on this single seizure, but the Supreme Court has long held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because the Fourth Amendment provides "an explicit textual source of constitutional protection" against the unreasonable use of deadly force, it "must be the guide for analyzing" claims of unconstitutional uses of deadly force. *Graham*, 490 U.S. at 395; *Garza v. Perez*, No. SA-20-CV-00097-XR, 2021 WL 2211113, at *5 (W.D. Tex. May 28, 2021) (dismissing Fourteenth Amendment claim due process and equal protection claims arising from alleged use of excessive force); *Scott v. White*, No. 1:16-CV-1287-RP, 2019 WL 122055, at *5 (W.D. Tex. Jan. 7, 2019) ("The right to be free from excessive force is protected by the Fourth Amendment, not the Fourteenth."); *DeGroff v. Bost*, No. 620CV00067ADAJCM, 2020 WL 6528078, at *5 (W.D. Tex. Nov. 5, 2020) (same). Plaintiff's Fifth and Fourteenth Amendment claims should be dismissed.

**B. Plaintiff's Fifth and Fourteenth Amendment Bivens Claims Improperly Seek to Extend the Bivens Implied Remedy Into New Contexts**

In *Bivens* and two subsequent cases, the Supreme Court implied the existence of private rights of action to allow claims for money damages as compensation for the specific constitutional deprivations alleged in those cases. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (discussing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)). In subsequent cases, the Supreme Court has "adopted a far more cautious course before finding implied causes of action." *Abbasi*, 137 S. Ct. at 1855. In the context of *Bivens* claims alleging constitutional violations, the Court must first determine (1) whether the claim falls within the implied remedy previously recognized in the Supreme Court's three prior *Bivens* decisions; and (2) if not, whether a new implied *Bivens* action should be recognized. *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). The Supreme Court recently noted that those two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, No. 21-147, 2022 WL 2056291 (U.S. June 8, 2022).

*Bivens* claims

> generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment[.]

*Oliva*, 973 F.3d at 442 (internal citations omitted). "Virtually everything else is a 'new context'"—and "extending *Bivens* to new contexts is a 'disfavored judicial activity.'" *Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1865, 1867).

i. Step 1: Plaintiff's Claims Arise in a Different Context than the Supreme Court's Prior *Bivens* Cases

Plaintiff's Fifth and Fourteenth Amendment *Bivens* claims do not arise within the scope of the *Bivens* rights that were recognized in *Davis*, *Carlson*, or in *Bivens* itself. *Oliva*, 973 F.3d at 442. *Davis* involved an implied right to bring a damages action for employment discrimination in violation of the Fifth Amendment's due process clause, but courts do not define a *Bivens* right at the level of the amendment or clause alleged to have been violated, or even whether "a plaintiff asserts a violation of the same clause of the same amendment *in the same way*[.]" *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks *Davis* . . . means the entirety of the Fifth Amendment's Due Process Clause is fair game in a Bivens action."). The proper test is whether the present case differs in a meaningful way from the Supreme Court's prior *Bivens* cases, for instance

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

*Abbasi*, 137 S. Ct. at 1859-60; *Cantu*, 933 F.3d at 423 (discussing *Abbasi*). The Supreme Court's prior *Bivens* cases presented (1) claims arising where officers "manacl[ed] the plaintiff in front of his family in his home and strip-search[ed] him in violation of the Fourth Amendment; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Oliva*, 973 F.3d at 442 (summarizing *Bivens*, *Davis*, and *Carlson*). This case, in which Plaintiff alleges an unreasonable use of deadly force by

a Deputy U.S. Marshal attempting to execute an arrest warrant on a hostile, noncompliant subject who attempted to evade officers using a truck, presents a vastly different set of circumstances. Additionally, "the constitutional right at issue" distinguishes Plaintiff's Fifth and Fourteenth Amendment claims from the Fourth Amendment unreasonable search and excessive force claims presented in *Bivens*. *Abbasi*, 137 S. Ct. at 1860.

> ii. <u>Step 2: Special Factors Weigh Against Recognizing a New Implied Damages Remedy for Plaintiff's Fifth and Fourteenth Amendment Claims</u>

Because Plaintiff's Fifth and Fourteenth Amendment claims arise in a different context than the Supreme Court's prior *Bivens* cases, this Court must consider "whether to engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action." *Oliva*, 973 F.3d at 443 quoting *Abbasi*, 137 S.Ct. at 1857. At this stage, the Court considers "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Oliva*, 973 F.3d at 443 ("The answer to that question is usually Congress." (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 750 (2020))). The Court does so by determining whether "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). "A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020). This threshold "is remarkably low" and "[i]f any special factors do exist, then courts *must refrain* from creating an implied cause of action in that case." *Id.* at 309 (internal quotation marks omitted); *Egbert*, 2022 WL 2056291 ("If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." (quoting *Hernandez*, 140 S. Ct. at 743)).

Such special factors are present in this case. First, "'the existence of a statutory scheme for torts committed by federal officers' weighs against inferring a new cause of action." *Oliva*, 973

F.3d at 442-43 (quoting *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019)). Second, the length of time that has passed in which Congress has not established a damages remedy for the constitutional violations that Plaintiff alleges is indicative of its intent not to. *Cantu*, 933 F.3d at 423 ("Because Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts . . . its 'failure to provide a damages remedy' here suggests 'more than mere oversight[.]'" (quoting *Abbasi*, 137 S. Ct. at 1862)); *see also Oliva*, 973 F.3d at 444 ("the separation of powers is itself a special factor. . . . we must consider what Congress has done and what Congress has left undone." (internal quotation marks omitted)).

Plaintiff alleges that the use of deadly force against Goodale was unreasonable. In addition to raising a Fourth Amendment claim, she also claims that this use of force violated Goodale's rights under the Fifth and Fourteenth Amendments. Plaintiff's claims arise in a context different than prior cases in which the Supreme Court has recognized a *Bivens* remedy. In light of the special factors discussed above, the Court should not now engage in the "disfavored judicial activity" of recognizing new implied remedies to accommodate Plaintiff's novel claims.

**C. Plaintiff's Pleadings, As Well as Video of the Officers' Encounter with Goodale, Show that DUSM Seguin's Use of Force did not Violate the Fourth Amendment and that DUSM Seguin is Entitled to Qualified Immunity**

Qualified immunity shields law enforcement officers from excessive force claims for money damages unless it was clearly established that the specific conduct they engaged in was unlawful. *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) ("overcoming qualified immunity is especially difficult in excessive-force cases"). Because qualified immunity is an immunity from suit rather than a mere defense against liability, it is effectively lost if a case is erroneously permitted to go to trial or an immune defendant is subjected to "the costs of discovery and other pre-trial burdens." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (discussing

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It is for this reason that the applicability of qualified immunity "should be determined at the earliest possible stage of the litigation[.]" *Ramirez*, 3 F.4th at 133 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

"'When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.'" *Ramirez*, 3 F.4th at 132 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). To overcome a pleading-stage assertion of qualified immunity, a plaintiff bears the burden of alleging specific facts that plausibly show (1) that the defendant's conduct violated the plaintiff's constitutional rights; and (2) that clearly established law prohibited defendant's specific conduct. *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1163 (5th Cir. 2021); *Ramirez*, 3 F.4th at 133.

Courts evaluate claims that an officer used excessive force in conducting an arrest or investigatory stop under the Fourth Amendment's "reasonableness" standard, assessing "whether the officer acted 'unreasonably' under the circumstances, and whether reasonable officers could differ on the lawfulness of an officer's actions." *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2018) (citing *Mullenix*, 136 S. Ct. at 308). This assessment must be conducted from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight, and must "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (summarizing *Graham*). In the context of uses of deadly force,[3] the Fourth Amendment's objective reasonableness balancing test focuses on

---

[3] In Fourth Amendment claims not involving the use of deadly force, reasonableness may depend on several factors, including the "'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

whether the officer reasonably believed that the subject posed a threat of serious harm to the officer or others. *Batyukova v. Doege*, 994 F.3d 717, 725 (5th Cir. 2021) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)); *see also Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1163 (5th Cir. 2021). "[A]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm." *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019) (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

"[A] vehicle can be a deadly weapon. If an officer believes he or others around him are in danger from the vehicle, it can be reasonable to use deadly force." *Goldston v. Anderson*, 775 F. App'x 772, 773 (5th Cir. 2019); *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (use of deadly force by an officer who reasonably believes a subject poses a threat of serious harm to the officer or others is "presumptively reasonable"). Two facts are "highly relevant": "'the limited time the officers had to respond and 'the closeness of the officers to the projected path of the vehicle.'" *Irwin v. Santiago*, No. 21-10020, 2021 WL 4932988, at *3 (5th Cir. Oct. 21, 2021) (citing *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007)).

The facts alleged in Plaintiff's Complaint, taken together with the events depicted in the video recordings of the encounter between Goodale and the task force officers, indicate that when the officers arrived to carry out the arrest warrant on Goodale, Goodale moved into the cab of a truck that was backed into the driveway of a residence. Docket no. 1 at ¶ 26; Exhibit A at 00:04. Two unmarked and one marked law enforcement vehicle stopped on the street in the forward path

---

or attempting to evade arrest by flight'"—but in deadly force cases the objective reasonableness inquiry "is constrained" and "[t]he threat-of-harm factor typically predominates the analysis[.]" *Harmon*, 16 F.4th at 1163 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *Batyukova*, 994 F.3d at 725 (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)).

of the truck, and officers spread out in a semi-circle around the front of the truck with their weapons drawn. Docket no. 1 at ¶¶ 26-27; Exhibit B at 00:46, 01:11. DUSM Seguin positioned himself in the forward path of the truck, towards the passenger side, no more than eight feet away from the truck and close to an unmarked law enforcement vehicle that was also in the truck's forward path. Exhibit B at 01:11.[4] Moments after the law enforcement vehicles and officers—including DUSM Seguin—take positions in the truck's forward path, the truck's windshield wipers activate and the taillight positioned on the upper rear of the truck's cab can be seen illuminating, indicating that Goodale has started the truck's engine. Exhibit A at 00:15; Exhibit B at 00:49, 01:14. Moments later, officers open fire and two small bursts of smoke can be seen rising from the front windshield of the truck. Exhibit A at 00:20; Exhibit B at 00:55. DUSM Seguin and other officers then back away from the truck as it moves forward, colliding with the unmarked police vehicle that DUSM had been standing by moments earlier. Exhibit A at 00:30. After striking the unmarked vehicle, the truck accelerates and its rear tires spin against the pavement, emitting a cloud of smoke, indicating that Goodale had put the truck in gear and was pressing the accelerator. Exhibit A at 00:44; Exhibit B at 01:02.

The reasonableness of using deadly force depended upon whether DUSM Seguin reasonably believed that himself or others around him were placed in danger of serious harm from Goodale's truck. *Goldston*, 775 F. App'x at 773. This, in turn, depends upon (1) the limited time DUSM Seguin had to respond and (2) the closeness of DUSM Seguin and others to the truck's projected path. *Irwin*, 2021 WL 4932988, at *3. The video recordings show that both factors weigh in favor of the reasonableness of using deadly force. DUSM Seguin was positioned mere feet away

---

[4] DUSM Seguin is the officer identified as "1" in the video footage. Exhibit B at 01:11.

from the truck and in its forward path, with task force officers and vehicles arrayed around him.[5] Once Goodale started the ignition and put the truck in gear—ignoring commands to exit the truck—it was reasonable for DUSM Seguin to believe that, within seconds, the truck could strike either himself or another task force officer. *Compare, e.g.*, *Sanchez v. Edwards*, 433 F. App'x 272, 275 (5th Cir. 2011) ("we have absolutely no trouble finding that the officer's decision to use deadly force was reasonable" where decedent "ignored numerous commands from the officers to bring his vehicle to a stop" and an officer had only a "short period of time in which the officers had to react" and was in "obvious peril given his position in front of the vehicle").

The events depicted in the video recordings are consistent with DUSM Seguin's account that he fired because he saw Goodale start the engine and put the truck in gear, and they "blatantly contradict[]" Plaintiff's conclusory assertion that Goodale did nothing that presented a threat to officers. Docket no. 1 at ¶¶ 29-30; *cf. Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1163 (5th Cir. 2021) (video depictions of excessive force incident controls over contrary factual allegations in complaint, affirming grant of Rule 12(b)(6) motion to dismiss). Use of deadly force is constitutional when an officer reasonably believes that a subject poses an immediate threat of serious harm to himself or others. A subject who attempts to use a vehicle to evade officers poses an "obvious threat of harm" to those in the vehicle's path and to certain others around the vehicle. *Harmon*, 16 F.4th at 1164 & n.3; *Goldston*, 775 F. App'x at 773; *Hathaway v. Bazany*, 507 F.3d

---

[5] This factor weighs in favor of the reasonableness of using deadly force both when an officer is directly in front of a vehicle and when an officer is near the vehicle's forward path, but "would only have been hit if the car swerved." *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007) (quoting *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005)); *see also Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1166-67 (5th Cir. 2021). In this case, DUSM Seguin was close to the truck's forward path, and other officers and police vehicles were positioned directly in front of Goodale's truck.

312, 321 (5th Cir. 2007). The video recording of Goodale's encounter with the task force officers indicates that he presented just such a threat.

In light of that threat, it was not unreasonable for DUSM Seguin to use deadly force. Arriving to carry out a federal felony arrest warrant, DUSM Seguin was confronted with a subject who got into a truck, started the ignition, and put the vehicle in gear—actions that DUSM Seguin reasonably believed signaled Goodale's imminent intent to evade arrest using the vehicle, endangering DUSM Seguin as well as other officers around the truck and in the police vehicles that were stopped in the truck's forward path. This scenario required DUSM Seguin to react immediately, given his own close proximity to the truck and the close proximity of other officers and law enforcement vehicles in the truck's forward path. After DUSM Seguin fired, the video footage shows that the truck moved forward, collided with the unmarked police vehicle near where DUSM Seguin had been standing moments prior, and accelerated, with its back tires emitting a plume of smoke, events that indicate that Goodale had in fact started the ignition and put the truck in gear.

DUSM Seguin's use of deadly force against Goodale was reasonable under the Fourth Amendment, and clearly established law did not prohibit DUSM Seguin's actions. Qualified immunity requires that Plaintiff's Fourth Amendment claim against him be dismissed.

## CONCLUSION

Plaintiff asserts *Bivens* claims against DUSM Seguin alleging violations of Randall Goodale's rights under the Fourth, Fifth, and Fourteenth Amendment, all in relation to DUSM Seguin's use of deadly force in the course of attempting to carry out a federal felony arrest warrant. Plaintiff's Fifth and Fourteenth Amendment claims should be dismissed both because the Fourth Amendment provides the exclusive textual source of constitutional protection against allegedly

unreasonable uses of force in effecting an arrest, *Graham v. Connor*, 490 U.S. 386, 395 (1989), and because allowing those claims to proceed would require this Court to engage in the "disfavored judicial activity" of recognizing *Bivens* claims in new contexts. *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). Plaintiff's Fourth Amendment *Bivens* claim against DUSM Seguin should be dismissed because video recordings of the encounter between Goodale and the fugitive task force show that DUSM Seguin used deadly force reasonably, in response to the threat of serious harm that Goodale posed to DUSM Seguin and others. For this reason, DUSM Seguin's use of deadly force did not violate the Fourth Amendment, and he is entitled to qualified immunity. Plaintiff's claims against DUSM Seguin should be dismissed in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: June 14, 2022.                               Respectfully submitted,

                                                    ASHLEY C. HOFF
                                                    UNITED STATES ATTORNEY

                                                     /s/ Robert Green
                                                    ROBERT D. GREEN
                                                    Texas Bar No. 24087626
                                                    James E. Dingivan
                                                    Texas Bar No. 24094139
                                                    Assistant United States Attorneys
                                                    601 N.W. Loop 410, Suite 600
                                                    San Antonio, Texas 78216
                                                    (210) 384-7362 (phone)
                                                    (210) 384-7312 (fax)
                                                    robert.green3@usdoj.gov
                                                    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify Exhibits to this Motion were provided to the Court electronically via Box.  I further certify the Exhibits were provided to all parties via USAfx on June 14, 2022.

      */s/ Robert Green*
      ROBERT D. GREEN
      Assistant United States Attorney