## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SAMANTHA NICHOLE HOUSTON GOODALE, INDIVIDUALLY AND AS NEXT FRIEND OF L.R.G., MINOR CHILD OF RANDALL GLEN GOODALE, JR., DECEASED; | § § § § § | Civil Action No. SA-22-CV-00031-XR |
| *Plaintiff*, | § § | |
| v. | § § | |
| MARK SEGUIN, DEPUTY U.S. MARSHAL, IN HIS INDIVIDUAL CAPACITY; NATHAN BUNDY, SAN ANTONIO POLICE OFFICER, IN HIS INDIVIDUAL CAPACITY; AND THE CITY OF SAN ANTONIO, TEXAS, | § § § § § § § | |
| *Defendants*. | § | |

## ORDER

On this date, the Court considered Defendant Seguin's motion to dismiss (ECF No. 8), Plaintiff's response (ECF No. 10), Defendant's reply (ECF No. 11), and Plaintiff's sur-reply (ECF No. 13). The Court also considered Defendant Seguin's supplemental authority and arguments (ECF No. 23), as well Plaintiff's response in opposition (ECF No. 24). A hearing was held on the motion to dismiss on November 10, 2022. ECF No. 27. After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff Samantha Nichole Houston Goodale, individually and as next friend of L.R.G., minor child of Randall Glen Goodale, Jr. ("Goodale") (collectively, "Plaintiff") brings this action against Defendant Mark Seguin ("Defendant"), a Deputy U.S. Marshal, in his individual

capacity, for violations of Goodale's constitutional rights under the Fourth Amendment pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*. 403 U.S. 388 (1971).[1]

Plaintiff's complaint arises from the fatal shooting of Randall Glen Goodale, Jr. ECF No. 1 at 6. On January 13, 2020, members of the Lone Star Fugitive Task Force were conducting surveillance pursuant to a federal felony warrant on Goodale at 4418 Stetson View, San Antonio, Texas. *Id*. Among the members of the Task Force were Defendant Deputy U.S. Marshal ("DUSM") Seguin and Defendant Officer Nathan Bundy of the San Antonio Police Department ("Bundy").

Plaintiff's complaint alleges that "Goodale was sitting in a truck in the front driveway of his friend's home" and that "less than 20 seconds after [arriving,] officers blocked the driveway, exited their vehicles, and drew their weapons, [and] DUSM Seguin and Officer Bundy fired multiple shots into the vehicle, each striking Mr. Goodale." *Id.* Defendant Seguin, in his motion to dismiss, describes the circumstances of the shooting differently.

> In DUSM Seguin's account, Goodale had been working underneath the truck, and as he saw task force officers approach, Goodale moved into the cab, locked himself inside, turned on the ignition, and ignored repeated officer commands to step out of the truck. According to DUSM Seguin, he fired only after Goodale shifted the trucked into gear, causing DUSM Seguin to fear that Goodale intended to flee in the truck, endangering the officers and police vehicles in the truck's path forward.

ECF No. 8 at 2. Video footage, made available after the Plaintiff's complaint was filed, appears to confirm that Goodale was working underneath the truck in the driveway and moved into the cab of the truck through the passenger door as officer vehicles arrived. ECF No. No 8-1 at 00:06.

---

[1] Plaintiff's claim for relief against Defendant Seguin in her complaint is brought pursuant to *Bivens* for violations of Goodale's Fourth, Fifth, and Fourteenth Amendment rights. ECF No. 1 at 7–10. Plaintiff, however, agreed to drop her Fifth and Fourteenth Amendment claims in her response (ECF No. 10 at 17) to Defendant Seguin's motion to dismiss (ECF No. 8). Therefore, only Plaintiff's *Bivens* claims arising from Goodale's Fourth Amendment rights remain pending before the Court.

Approximately nine seconds later, the truck's windshield wipers are activated. *Id*. at 00:15. The taillight positioned on the upper rear of the truck's cab can also be seen illuminating soon after Goodale entered the truck but before shots were fired. ECF No. 8-2 at 00:49. Defendant alleges that these factors together indicate that Goodale had started the truck's engine. ECF No. 8 at 12. Approximately five seconds later, shots were fired at the cab of the vehicle (ECF No. 8-1 at 00:20), and the vehicle begins to move forward approximately five seconds thereafter. ECF No. 26-1 at 00:35. Only Defendant Bundy's body-worn camera footage contains audio, and it is therefore difficult for the Court to determine whether Goodale ignored commands to step out of the truck or if Goodale shifted the truck into gear before the shots were fired.

Plaintiff filed her complaint on January 13, 2022. ECF No. 1. Defendant City of San Antonio, Texas filed its answer on February 3, 2022. ECF No. 3. Defendant Bundy filed his answer on February 11, 2022. ECF No. 5. Defendant Seguin filed his motion to dismiss on June 14, 2022. ECF No. 8. Plaintiff filed her response on June 28, 2022. ECF No. 10. Defendant replied on July 5, 2022. ECF No. 11. Plaintiff sought leave to file a sur-reply on July 13, 2022. ECF No. 13. Defendant Seguin sought leave to file supplemental authority and arguments on September 22, 2022. ECF No. 23. Plaintiff responded in opposition on October 13, 2022. ECF No. 24. A hearing was held on the motion to dismiss on November 10, 2022. ECF No. 27.

Plaintiff's complaint brings a *Bivens* claim against Defendant Seguin, as well as an excessive force claim pursuant to 42 U.S.C. § 1983 against Defendant Bundy and a *Monell* liability claim pursuant to 42 U.S.C. § 1983 against the City of San Antonio, Texas. ECF No. 1 at 7–16. The claim against Defendant Seguin is the subject of this Order.

## DISCUSSION

### I.      Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked

assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

Finally, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

## II.  Analysis

### A.  Admissibility of Video Footage

The Court turns first to the admissibility, at this 12(b)(6) juncture, of the video evidence provided by Defendant Seguin in his motion to dismiss. *See* ECF No. 8-1, 8-2. Plaintiff contends that the Court should exclude Defendant Seguin's outside video evidence. ECF No. 10 at 6–9. Plaintiff argues that these video recordings, because they are not included in Plaintiff's original complaint, should be either excluded, so that the motion is decided on only the complaint, or otherwise that the evidence should be admitted, converting the motion to dismiss to a motion for summary judgment and therefore permitting the parties to submit supplemental evidence and material under Fed. R. Civ. P. 12(d). ECF No. 10 at 8. The Court disagrees.

The Fifth Circuit, in *Harmon v. City of Arlington*, notes that video footage is central to a Plaintiff's claims when the footage depicts the events alleged. 16 F.4th 1159, 1164 (5th Cir. 2021). Additionally, when evidence is referenced in a plaintiff's complaint and subsequently

made available in a defendant's motion to dismiss, the court is permitted to rely on those documents at the 12(b)(6) stage. *See 330 Cedron Tr. v. Citimortgage, Inc.*, No. SA-14-CV-933-XR, 2015 WL 1566058, at *2 (W.D. Tex. Apr. 8, 2015) (noting that documents attached to defendant's motion to dismiss that were referenced in Plaintiff's petition and central to Plaintiff's claims would be considered in the Court's analysis of the motion to dismiss).

Plaintiff's complaint notes that "Plaintiff has requested on multiple occasions all body-worn camera and dash-cam footage of the subject incident but have [sic] been unable to obtain the same due to a claimed pending investigation." ECF No. 6 at 7. Plaintiff also references the video footage in the complaint when she notes that "[u]pon information and belief, surveillance footage from the home where the subject incident took place later contradicted the events leading up to the shooting as reported by SAPD" and "SAPD pulled their detectives from the U.S. Marshals Lone Start Fugitive Task Force after the surveillance footage was released to the media by the homeowner and four days after Decedent was shot and killed." *Id.* at 16. Two neighborhood surveillance recordings (without audio) and Officer Bundy's body-worn camera footage (with audio) were ultimately made available after Plaintiff's complaint was filed. *See* ECF Nos. 8-1, 8-2, 26-1.

Because the Court holds that the video recordings are both referenced in Plaintiff's complaint and central to Plaintiff's *Bivens* claims against Defendant Seguin, the Court will consider the surveillance videos attached to the motion to dismiss (ECF Nos. 8-1, 8-2), in addition to Defendant Bundy's body-worn camera footage submitted by Plaintiff (ECF No. 26-1) in its analysis.

### B. *Bivens* Claim

Because Plaintiff has withdrawn her claims against Defendant Seguin under the Fifth and Fourteenth Amendments (ECF No. 10 at 17), only Plaintiff's *Bivens* claim against Defendant Seguin remains pending. The Supreme Court recognized in *Bivens* a cause of action under the Fourth Amendment, entitling petitioner "to recover money damages for any injuries he ha[d] suffered as a result of the [federal] agents' violation of the Amendment." 403 U.S. at 397. Since *Bivens* was decided in 1971, the Supreme Court has extended the *Bivens* remedy on only two occasions: once for a claim of general discrimination under the Fifth Amendment (*see Davis v. Passman*, 442 U.S. 228, 248–49 (1979)) and once for inadequate prison medical care under the Eighth Amendment (*see Carlson v. Green*, 446 U.S. 14, 18–23 (1980)).

Courts apply a two-step test when evaluating whether to recognize a *Bivens* remedy for an alleged constitutional violation. *Egbert v. Boule*, 213 L. Ed. 2d 54, 142 S. Ct. 1793, 1803 (2022). Analysis under the test proceeds as follows:

> A court asks first whether the case presents a new *Bivens* context—*i.e.,* is it meaningfully different from the three cases in which the Court has implied a damages action, and, second, even if so, do special factors indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. This two-step inquiry often resolves to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. Further, under the Court's precedents, a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure.

*Egbert v. Boule*, 142 S. Ct. 1793, 1797–98 (internal citations and quotations omitted).

The Fifth Circuit has similarly shed light on the *Bivens* remedy. "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the

unreasonable-searches-and-seizures clause.'" *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (quoting *FDIC v. Meyer*, 510 U.S. 471, 484 n.9 (1994)).

Outside of the three circumstances in which the Supreme Court recognized in *Bivens* a cause of action, "Virtually everything else is a 'new context.'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 210 L. Ed. 2d 832, 141 S. Ct. 2669 (2021), *reh'g denied*, 210 L. Ed. 2d 1000, 141 S. Ct. 2886 (2021) (quoting *Abbasi*, 137 S. Ct. at 1865 (explaining that "the new-context inquiry is easily satisfied")). The Fifth Circuit has underscored the Supreme Court's emphasis that its "understanding of a 'new context' is broad." Oliva, 973 F.3d at 442 (quoting *Hernandez v. Mesa*, 206 L. Ed. 2d 29, 140 S. Ct. 735, 743 (2020). Because "even a modest extension" of the *Bivens* trilogy "is still an extension" (*Abbasi*, 137 S. Ct. at 1864), and because, "to put it mildly, extending *Bivens* to new contexts is a 'disfavored judicial activity,'" (*Oliva*, 973 F.3d at 442 (citing *Abbasi*, 137 S. Ct. at 1857)), courts across the country have proceeded with extreme caution when recognizing a *Bivens* remedy. With regards to the special factors analysis, the core of such analysis is "maintaining the separation of powers." *Canada v. United States*, 950 F.3d 299, 309, 312 (5th Cir. 2020). If recognizing a new *Bivens* cause of action would "risk improperly entangling courts in matters committed to other branches," the judiciary should not create such a remedy. *Butler v. Porter*, 999 F.3d 287, 295 (5th Cir. 2021).

## 1. New Context

Plaintiff contends that this case does not present a new context because it does not meaningfully differ from previous *Bivens* cases. ECF No. 24 at 5. Plaintiff asserts that the existence of a warrant in this case, as well as the fact that the arrest was not at Goodale's home, do not constitute meaningful differences under *Abbasi*. *Id*. While certain similarities exist between *Bivens* and this case (both cases involve an assertion by Plaintiff that federal agents

used excessive force in violation of the Fourth Amendment), the Court ultimately concludes that this case still presents a new context under Supreme Court and Fifth Circuit guidance.

The similarities this case shares with *Bivens* are not enough to warrant the conclusion that this case falls into one of the existing *Bivens* actions. Ultimately, the Court finds that the presence of a warrant and the fact that the arrest took place outside of Plaintiff's home in this case together to be meaningful differences between the claim asserted by Plaintiff here and the claim asserted by the Plaintiff in *Bivens*. District courts across the country have reached the same conclusion post-*Abbasi*. *See, e.g.*, *Ciencia v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (finding Plaintiff's "claim presents a new context because of at least one key factual difference: *Bivens* involved narcotics agents who arrested the plaintiff and searched the residence *sans* warrant; the defendants here acted pursuant to a valid arrest warrant); *Young v. City of Council Bluffs*, 569 F. Supp. 3d 885, 893-94 (S.D. Iowa 2021) (finding a new context existed because Plaintiff "was arrested outside of his home based on an arrest warrant); *Xiaoxing Xi v. Haugen*, No. CV 17-2132, 2021 WL 1224164, at *17 (E.D. Pa. Apr. 1, 2021) (finding that, "in contrast to *Bivens*, Xi's claims do not involve a warrantless search and seizure"); *Style v. Mackey*, No. 17CV1691ENVSJB, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020) (holding that "this case presents a new context from the narrow circumstances in *Bivens* [because] [m]ost critically, although Style's excessive force claim arises under the Fourth Amendment, it invokes a materially distinct constitutional interest from the privacy rights at issue in *Bivens*. . . . Further counterpointing this case against *Bivens* is defendants' arrest of Style pursuant to a valid arrest warrant); *Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019) (holding that "[t]he case also differs meaningfully from *Bivens* because the "legal mandate under which the officer was operating" is materially different. Plaintiff's arrest was made upon

probable cause after a valid vehicle search conducted with probable cause"); *Belfrey-Farley v. Palmer*, No. 3:19-CV-1305-S-BT, 2021 WL 2814885, at *5 (N.D. Tex. May 7, 2021), *report and recommendation adopted*, No. 3:19-CV-1305-S-BT, 2021 WL 2808826 (N.D. Tex. July 6, 2021) (holding that "searching an arrestee's residence incident to executing a lawful (or at least unchallenged) warrant for his or her arrest presents meaningfully different circumstances than those in *Bivens*, where the agents acted without an arrest or search warrant").

### 2. Special Factors

Because the Court concludes this case presents a new *Bivens* context, the Court therefore next turns to analyzing whether "there are any special factors that counsel hesitation" in extending *Bivens*. *See Hernandez*, 140 S. Ct. at 743 (internal quotation marks and alterations omitted) (quoting *Abbasi*, 137 S. Ct. at 1857). Furthermore, "[i]f there are alternative remedial structures in place, "that alone," like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858). "The *Bivens* inquiry does not invite federal courts to independently assess the costs and benefits of implying a cause of action. A court faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1805 (quoting *Ziglar*, 137 S. Ct. at 1858). With this guidance in mind, the Court examines whether alternate remedial structures for aggrieved parties in Plaintiff's position exist that would foreclose a *Bivens* action and provide alternate ways to address allegations of misconduct by United States Marshals.

Defendant Seguin argues, and the Court agrees, that alternate mechanisms exist to investigate and deter wrongdoing by United States Marshals. To begin, the United States

Marshals Service has an Office of Professional Responsibility (OPR) that "ensures all allegations of misconduct and integrity violations are analyzed and investigated in compliance with the Department of Justice (DOJ) and U.S. Marshals Service policies and procedures" and directs individuals to submit any allegations of misconduct to the OPR.[2]

Additionally, Congress has, through the Director General Act of 1978, authorized that the Director General, including that of the Department of Justice:

> (1) may initiate, conduct and supervise such audits and investigations in the Department of Justice as the Inspector General considers appropriate;
>
> (2) shall give particular regard to the activities of the Counsel, Office of Professional Responsibility of the Department and the audit, internal investigative, and inspection units outside the Office of Inspector General with a view toward avoiding duplication and insuring effective coordination and cooperation; and
>
> (3) shall refer to the Counsel, Office of Professional Responsibility of the Department for investigation, information or allegations relating to the conduct of an officer or employee of the Department of Justice employed in an attorney, criminal investigative, or law enforcement position that is or may be a violation of law, regulation, or order of the Department or any other applicable standard of conduct, except that no such referral shall be made if the officer or employee is employed in the Office of Professional Responsibility of the Department.

5 U.S.C. App. 3 § 8E(d).

Finally, the Court notes that Congress permits that "[t]he Attorney General may settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer . . . who is

---

[2] *See* U.S. Marshals Service, *Office of Professional Responsibility*, https://www.usmarshals.gov/who-we-are/office-of-professional-responsibility (last visited November 6, 2022).

employed by the Department of Justice acting within the scope of employment that may not be settled under chapter 171 of title 28 [FTCA]." 31 U.S.C. § 3724.

Viewing these various alternative remedial structures together, the Court holds that implying a remedy in this case is inappropriate. Inquiring into whether special factors counsel for or against extending the *Bivens* remedy focuses on whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *See Egbert v. Boule*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1858). The Court finds that Congress has sufficiently acted in this area, creating alternative remedies to address allegations of wrongdoing by United States Marshals, and thereby limiting the appropriateness of judicial action in finding an implied *Bivens* remedy here.

In conclusion, "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are 'not as effective as an individual damages remedy.'" *Egbert*, 142 S. Ct. at 1807.

Because the Court concludes that Plaintiff has not set forth a valid *Bivens* action, the Court need not address whether Defendant Seguin would otherwise be entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's first amended complaint is **GRANTED** and Plaintiff's claim against Defendant Seguin are **DISMISSED**. A final judgment pursuant to Rule 58 will follow with respect to Plaintiff's claims against

Defendant Seguin. Plaintiff's claims against Defendant Bundy and the City of San Antonio remain pending.

It is so **ORDERED**.

**SIGNED** this 17th day of November, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE